UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS DAVID DOWLING,

    Plaintiff,

  v.                                                                                         Case No. 22-CV-1308-SCD

MARTIN J. O'MALLEY,
   *Commissioner of the Social Security Administration*,

    Defendant.

## DECISION AND ORDER

Thomas Dowling applied for disability benefits after experiencing persistent pain in his surgically repaired right ankle. He alleged that he couldn't work anymore primarily due to issues with prolonged standing. The Commissioner of the Social Security Administration denied the application, and, after a hearing, an administrative law judge found Dowling capable of performing light exertional work with some restrictions. Dowling seeks judicial review of that decision, arguing that the ALJ erred in evaluating the opinions of his treating podiatrist. I agree that the ALJ reversibly erred when she misstated several of the podiatrist's opinions. Accordingly, I will reverse the decision denying Dowling disability benefits and remand the matter for further proceedings.

## BACKGROUND

Dowling fractured his right ankle in 2011 after slipping on ice outside his apartment. R. 494, 517, 820.[1] He had the ankle surgically repaired, but he didn't participate in physical

---

[1] The transcript is filed on the docket at ECF No. 10-2 to ECF No. 10-14.

therapy post-surgery because he says he was too busy with work, selling cell phones. *See* R. 199, 214, 475, 491, 494, 524. After getting laid off from the cell phone store, Dowling got a new job unloading trucks for a department store. R. 199, 214–15, 494. That strenuous job aggravated Dowling's ankle issues, and he didn't survive past the probationary period. R. 198, 494, 496, 510–11, 513, 599, 680. He stopped working on June 24, 2015, and he hasn't worked since.

Dowling applied for disability benefits in September 2015. *See* R. 166–67, 197–203, 205–13. He alleged disability beginning on his last day of work, due to broken tibia and fibular bones at his ankle. R. 166, 198. Dowling asserted that he was unable to return to work due to ankle pain that worsened with prolonged standing, walking, and sitting. R. 205. He estimated that, without a break, he could sit for four hours, stand for one hour, and walk for one hour. R. 212. He further estimated he could sit for most of the day but could stand and walk, respectively, for only two hours a day.

Given a lack of treatment records, the Social Security Administration referred Dowling for a consultative examination. *See* R. 74–75. Neal Pollack, D.O., examined Dowling in October 2015 and wrote a short report of his findings. *See* R. 475–76. During the physical exam, Dowling—who was 5'8" tall and weighed 240 pounds at the time—exhibited normal range of motion flexing his right ankle up and down, but he did have some restriction in internal and external rotation. He also could get up from a sitting position and walk, though he did so with a limp. Dr. Pollack opined that Dowling had no specific limitation in sitting or standing and should limit lifting to about twenty pounds. He also indicated that Dowling would benefit from weight loss and self-directed foot and ankle range of motion exercises.

The state agency charged with reviewing the disability application on behalf of the Social Security Administration denied Dowling's claim initially and upon his request for reconsideration. *See* R. 71–169. Syd Foster, D.O., reviewed the medical records and found that Dowling could perform the full range of medium exertional work.[2] R. 77–78. The reviewing physician at the reconsideration level, Ronald Shaw, M.D., agreed that Dowling could perform medium work but found he could only frequently kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. R. 88–90.

Meanwhile, Dowling complained to his primary care provider about persistent pain in his right ankle. R. 523–24. Dowling had somewhat restricted range of motion, no specific pain to palpation, and a steady and stable gait during his physical exam. R. 525. He was assessed right foot/ankle pain and referred for physical therapy. During his subsequent therapy sessions, Dowling exhibited marked restricted foot and ankle movements, a slightly antalgic gait, and poor rocker actions and step off. *See* R. 493–504, 508–15, 518–23. He was referred to podiatry.

Dowling presented to the podiatrist, Thomas E. Sinnett, in February 2016. *See* R. 488–89. After examining Dowling's foot and ankle, Dr. Sinnett assessed degenerative joint disease and ordered x-rays and prescription orthotics. The x-rays revealed mild degenerative changes at the tibiotalar joint, mild to moderate degenerative changes at the subtalar joint, and mild degenerative changes elsewhere in midfoot area. *See* R. 480, 490, 532. Dowling saw Dr. Sinnett again in August 2016. *See* R. 541–42. He told Dr. Sinnett that the orthotics seemed to

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F. R. § 404.1567(c).

3

help, but he still was able to walk for only a limited time. Dr. Sinnett ordered a CT scan and a prescription ankle brace and noted that Dowling was not interested in further surgery at that time. The CT scan revealed mild degenerative joint changes in the ankle. *See* R. 542–43.

Dowling continued to see Dr. Sinnett throughout 2016, 2017, and 2018. *See* R. 545–47, 621–24, 1385–87, 1394–96. During physical exams, he demonstrated adequate muscle strength against resistance, decreased flexion and rotation, and mild tenderness. Dowling had his first cortisone injection in June 2017, and he received additional injections in December 2017 and July 2018.

Dr. Sinnett also submitted several statements in support of Dowling's disability application. In May 2017, he wrote a letter detailing the treatment relationship, clinical findings, and treatments pursued. *See* R. 532. Dr. Sinnett indicated that Dowling told him he was unable stand or walk for more than an hour given his pain and restricted ankle motion. Dr. Sinnett opined that Dowling's right ankle degeneration could be considered permanent.

In December 2017, Dr. Sinnett filled out a residual functional capacity form. *See* R. 774–78. He described the treatment relationship, Dowling's symptoms, his diagnoses, and the treatments provided. Dr. Sinnett indicated that Dowling's impairment prevented him from standing for six to eight hours. When asked if Dowling could stand at all and, if so, for how long, Dr. Sinnett wrote, "Yes—unsure, question patient—he gets tired after 1 hour." R. 775. Similarly, Dr. Sinnett indicated that Dowling's impairment prevented him from sitting upright for six to eight hours but that he could sit for some time. Dr. Sinnett again said he was "unsure" precisely how long Dowling could sit, so he asked him; Dowling said he was "unable to sit in one spot for any length of time" and had to alternate between sitting and standing. *Id.* Dr. Sinnett explained that Dowling couldn't engage in prolonged standing or sitting due to

4

difficulty bearing weight on his degenerated joint. R. 776. As for lifting abilities, Dr. Sinnett indicated that Dowling could lift and carry less than five pounds both "during an eight-hour period" and "regularly/daily." *Id.* Dr. Sinnett believed that Dowling's inability "to bear weight for any length of time" prevented him from returning to his previous employment. R. 778. However, according to Dr. Sinnett, Dowling "could do sitting type of employment as long as he is given opportunity to get up and move around." *Id.*

In October 2020, Dr. Sinnett confirmed that the restrictions he outlined on the 2017 RFC form still held true. *See* R. 1397.

After the state agency denied his application, Dowling had a hearing with an ALJ employed by the Social Security Administration. *See* R. 33–70. In May 2018, the ALJ issued a written decision denying Dowling's application. *See* R. 15–31. The Social Security Administration's Appeals Council subsequently denied Dowling's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). Dowling sought judicial review, and the district court remanded the matter to the Commissioner pursuant to a joint motion. *See* R. 851–934. The Appeals Council vacated the 2018 decision and remanded the matter to an ALJ to re-evaluate (among other things) Dr. Sinnett's opinions that Dowling's "impairments prevent him from standing or sitting upright for six to eight hours," that Dowling "is 'unable to sit in one spot for any length of time,'" and that Dowling "has to alternate between sitting and standing." R. 935–40 (quoting R. 775).

In November 2020, Dowling had a hearing with a different ALJ. *See* R. 809–46. Dowling testified at the hearing. *See* R. 815–41. He told the ALJ that he couldn't work anymore due to nagging pain in his right ankle that made it hard to stand, sit, and walk for

5

extended periods. Dowling indicated that he could stand for twenty to thirty minutes and sit for ten to fifteen minutes before the pain became so severe that he needed to change positions. The ALJ also heard testimony from Spencer Mosely, a vocational expert. *See* R. 841–45. Mosely testified that a hypothetical person with Dowling's vocational profile could perform all his past jobs if he was limited to a restricted range of light exertional work.

The ALJ issued a second unfavorable decision in December 2020. *See* R. 789–808. She considered the disability application under 20 C.F.R. § 404.1520(a), which sets forth a five-step process for evaluating DIB claims. *See* R. 792–802. The ALJ noted that Dowling met the insured status requirements of the Social Security Act through September 2018 and, therefore, she evaluated the period between that date and Dowling's alleged onset date of June 24, 2015. R. 795. At step one, the ALJ determined that Dowling had not engaged in substantial gainful activity. The ALJ determined at step two that Dowling had two severe impairments: obesity and degenerative joint disease of the right ankle and foot. At step three, the ALJ determined that Dowling did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings").

The ALJ next assessed Dowling's residual functional capacity—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. § 404.1545(a). The ALJ determined that Dowling could work at the light exertional level[3] with several additional limitations, including no more than frequent crouching or crawling and no more than occasional climbing and

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

6

operating foot controls with the right lower extremity. R. 795–96. In assessing that RFC, the ALJ considered Dowling's subjective allegations about his impairments, the medical evidence, the prior administrative medical findings, and the medical opinion evidence. *See* R. 796–801. The ALJ assigned little weight to Dr. Foster's and Dr. Shaw's findings that Dowling could perform medium work, some weight to Dr. Shaw's assessed nonexertional limitations, and partial weight to the opinions of Dr. Pollack and Dr. Sinnett, respectively. R. 798–801.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Dowling could perform his past relevant work as a sales clerk, a retail sales manager, and an auto salesperson. R. 801. Based on the step-four finding, the ALJ determined that Dowling was not disabled at any time from his alleged onset date through the date last insured. R. 802.

The ALJ's 2020 decision became the final decision of the Commissioner after remand because the Appeals Council did not assume jurisdiction over the case, R. 782–88. *See* 20 C.F.R. §§ 404.955, 404.984.

In November 2022, Dowling filed this action seeking judicial review of the Commissioner's decision denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 7. Dowling filed a brief in support of his disability claim, ECF No. 11; the Commissioner of the Social Security Administration filed a brief in support of the ALJ's decision, ECF No. 21; and Dowling filed a reply brief, ECF No. 28.

7

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Dowling contends that the ALJ erred in evaluating Dr. Sinnett's opinions. Because Dowling applied for disability benefits before March 27, 2017, the ALJ applied the old social security regulations for evaluating medical opinions and prior administrative medical

8

findings. *See* R. 796 (citing 20 C.F.R. § 404.1527). According to those regulations, "[a]n ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(b), (c); *Knight v. Chater*, 55 F.3d 309, 313–14 (7th Cir. 1995)). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The failure to consider a medical opinion is legal error and requires reversal, unless the error is harmless. *See, e.g., Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

The regulations also explain how an ALJ must weigh medical opinions. *See* 20 C.F.R. § 404.1527(c). "A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." *Roddy*, 705 F.3d at 636 (citing 20 C.F.R. § 404.1527(c)(2); *Skarbek*, 390 F.3d at 503). "When controlling weight is not given, an ALJ must offer 'good reasons' for doing so, after having considered" several factors, including the length, nature, and extent of the claimant's relationship with the treating physician; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)); *see also* § 1527(c).

Dowling first argues that the ALJ misrepresented several of Dr. Sinnett's opinions; I agree. The ALJ indicated that Dr. Sinnett was unsure if Dowling could stand or sit upright for six to eight hours. R. 799. Dr. Sinnett, however, unequivocally opined that Dowling's right ankle impairment prevented him from standing or sitting upright for that long. *See* R. 777. To

9

be sure, Dr. Sinnett said that he didn't know precisely how long Dowling could stand or sit upright. But Dr. Sinnett expressed no doubt that, however long Dowling could stand or sit upright, six hours was too much. Indeed, the Appeals Council accurately recited Dr. Sinnett's opinion in its remand order, noting that "Dr. Sinnett . . . indicated that the claimant's impairments prevent him from standing or sitting upright for six to eight hours." R. 937. The ALJ also misrepresented Dr. Sinnett's opinion concerning Dowling's ability to lift and carry, claiming Dr. Sinnett indicated that Dowling could never lift more than five pounds. R. 799–800. What Dr. Sinnett actually said was that Dowling could lift and carry less than five pounds both "during an eight-hour period" and "regularly/daily." R. 776. Thus, the ALJ significantly misstated Dr. Sinnett's opined standing, sitting, and lifting limitations.

Calling out the ALJ's erroneous recitation of Dr. Sinnett's opinions does not, as the Commissioner suggests, amount to "mere nitpicking of the ALJ's decision," Def.'s Mem. 15. Dowling alleged disability based solely on his right ankle impairment, and he told the ALJ that he was unable to tolerate the standing requirements of his prior jobs. Dr. Sinnett is a specialist who treated Dowling's degenerative ankle issues for several years. His bottom-line conclusion was that Dowling could not return to his previous line of work, but he could perform a sit-down job if allowed to get up and move around from time to time. However, given his age and vocational profile, social security regulations dictate that Dowling would be disabled if capable of only sedentary exertional work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.04. So Dowling's ability to engage in prolonged standing is *the* decisive issue in his disability claim. The ALJ, however, erroneously suggested that Dr. Sinnett never offered an opinion on Dowling's ability to stand throughout the workday when, in fact, Dr. Sinnett believed that Dowling's degenerative ankle prevented him from being on his feet most of the

10

day. And because the ALJ misrepresented Dr. Sinnett's opinions, it's impossible to evaluate whether she gave good reasons for assigning them only partial weight.

The Commissioner argues that any error in expressing Dr. Sinnett's opinions was harmless. The Seventh Circuit has held that administrative error like the one here is subject to harmless-error review and that remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citations omitted); *see also Rockwell v. Saul*, 781 F. App'x 532, 537–38 (7th Cir. 2019) (applying harmless error where an ALJ mischaracterized the report of a treating physician). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Rather, the question for a reviewing court "is now prospective—can [it] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

I cannot say with great confidence that on remand the ALJ would assign little weight to Dr. Sinnett's opinions about Dowling's ability to stand, sit, and lift over the course of a workday. Dr. Sinnett explained that he based his opinions in part on the 2016 diagnostic imaging, which revealed mild to moderate degenerative changes in Dowling's right ankle. *See* R. 488–92, 532, 542–43, 774. Dr. Sinnett also relied on his own treatment notes, and the ALJ acknowledged those objective findings were "mixed," R. 798. For example, while Dowling often had adequate strength in his ankle, he also consistently exhibited restricted range of motion and tenderness to palpitation. *See, e.g.*, R. 478–531, 535–49, 621–22, 1385–87, 1394–96. Likewise, sometimes Dowling presented with a normal gait, while at other times he

11

walked with a limp. *See id.* The objective medical evidence therefore is not clearly inconsistent with Dr. Sinnett's opinions.

Moreover, the other medical opinion evidence in the record does not clearly outweigh Dr. Sinnett's opinions. Dr. Pollack opined, after just one examination, that Dowling did not have any specific limitations in sitting or standing. The ALJ, however, rejected that part of the opinion, noting that it was inconsistent with both Dr. Pollack's own recommendation of weight loss and range of motion exercises and the overall record showing some degree of exertional difficulty. R. 799. Similarly, the ALJ rejected the exertional findings of the state-agency physicians, who never examined Dowling but thought he was capable of medium work. R. 798–99. The ALJ therefore found that the record did not support and was inconsistent with the other doctors' opinions concerning Dowling's ability to stand, sit, and lift. In addition to lacking a treatment relationship with Dowling, those doctors were not specialists, and they issued their findings in late 2015 and early 2016. Dr. Sinnett, on the other hand, is a specialist who treated Dowling for years and issued his opinions about Dowling's degenerative condition as recently as October 2020. Because most of the regulatory factors appear to favor Dr. Sinnett, I cannot say that the ALJ's mistakes were harmless in this case.

Dowling also argues that the ALJ failed to explain how she evaluated the one opinion she accurately recited. The ALJ correctly noted that Dr. Sinnett said Dowling was unable to bear weight for any length of time. R. 799–800. The ALJ indicated that this opinion was inconsistent with objective findings showing normal strength. However, the ALJ never explained what she thought Dr. Sinnett meant by "any length of time." It's clear from the entire RFC form that he didn't mean no time whatsoever; again, Dr. Sinnett's bottom-line conclusion was that Dowling could perform a sit-down job if he was allowed to get up and

12

move around. Because the ALJ never resolved the apparent inconsistency between Dr. Sinnett's two statements, we don't know whether substantial evidence supports her decision to reject that opinion.

Finally, Dowling takes issue with one of the reasons the ALJ offered for giving only partial weight to Dr. Sinnett's opinions. The ALJ indicated that Dr. Sinnett "expressly" deferred to Dowling's reports as the basis for his standing and sitting limitations. R. 800. According to Dowling, this reason is demonstrably false. Dr. Sinnett did say that he was unsure about exactly how long Dowling could stand and sit upright, so he asked his patient. R. 775. However, it's not clear whether Dr. Sinnett endorsed Dowling's response—that he got tired after standing for one hour and that he was unable to sit in one spot for any length of time—as his own. The ALJ on remand should take care to differentiate between Dr. Sinnett's description of his patient's subjective reports and Dr. Sinnett's own medical opinions. *See Karr*, 989 F.3d at 512 (citing *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013)) (explaining that "[t]he difference matters, as an ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints").

## CONCLUSION

For all the foregoing reasons, I find that the ALJ reversibly erred in evaluating the opinions of Dowling's treating podiatrist. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 9th day of February, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge